1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                   **SOUTHERN DISTRICT OF CALIFORNIA**

8

9   JOHN A. YOUNG, M.D., individually,              CASE NO. 10cv976-WQH-BGS
    and as Trustee of the JOHN A. YOUNG,
10  M.D., INC. DEFINED PENSION PLAN                 ORDER
    TRUST II,
11
                              Plaintiff,
12          vs.

13  FLUOROTRONICS, INC., a California
    corporation, OLGA SHARTS, an
14  individual, and GIL D. TERRY, an
    individual,
15
                              Defendants.
16  ─────────────────────────────────
    FLUOROTRONICS, INC., a California
17  corporation, OLGA SHARTS, an
    individual, and GIL D. TERRY, an
18  individual,

19                        Counterclaimants,
            vs.
20  JOHN YOUNG, M.D., an individual, and
    Trustee of the JOHN A. YOUNG, M.D.,
21  INC. DEFINED PENSION PLAN
    TRUST II, ROES 1-100,
22
23                        Counterdefendant.

24  HAYES, Judge:

25          The matters before the Court are the Motion to Dismiss Counterclaim (ECF No. 10) and

26  the Motion to Strike Portions of the Answer and Counterclaim (ECF No. 11), filed by

27  Counterdefendant John Young, M.D. ("Young"), individually and as Trustee of the John A.

28  Young, M.D. Inc. Defined Pension Plan Trust II ("Pension Plan").

                                    - 1 -                          10cv976-WQH-BGS

## I.     Background

On May 6, 2010, Young initiated this action by filing a Complaint against Fluorotronics, Inc. ("Fluorotronics"), Olga Sharts and Gil D. Terry. (ECF No. 1). On June 11, 2010, Fluorotronics, Sharts, Terry and Richard Kuntz filed an Answer and Counterclaim against Young. (ECF Nos. 5, 6).[1]

### A.     Allegations of the Complaint

In March of 2007, Young met with Sharts and Terry "regarding a possible investment in Defendant Fluorotronics." *Id*. ¶ 12. "At the meeting, the parties discussed the many potential applications of Fluoro-Raman technology...." *Id*. "The Fluoro-Raman technology would be able to detect problems with food and drugs before they are distributed, and can also detect counterfeit drugs.... This invention is a non-destructive and rapid screening device that can be carried in a brief case or set up in multiple locations by the FDA and many other food and drug companies." *Id*.

On July 11, 2007, Sharts and Terry provided Young with Fluorotronics' "Private Placement Memorandum" dated January 1, 2007, a "Subscription Stock and Warrant Agreement" dated July 11, 2007, and a Balance Sheet for Fluorotronics dated December 31, 2006. *Id*. ¶ 13. The Private Placement Memorandum and Balance Sheet falsely stated that Fluorotronics was the owner of the "iStar ICCD Intensified CCD Detector Head camera" ("Camera") and "certain Laser Equipment" ("Laser"). *Id*. The Camera and the Laser were "integral part[s] of the Product that Fluorotronics was proposing to launch and offer for sale." *Id*. Without the Camera and Laser, "there simply is no Product and no business to generate revenue and a return or potential return on Plaintiffs' investments in Fluorotronics." *Id*. "Sharts directed Young's attention to the balance sheet saying repeatedly that Fluorotronics owned the Camera and Laser as was shown under the fixed assets section of the balance sheet. This statement is materially false and misleading." *Id*. On the Balance Sheet, Fluorotronics' intellectual property was identified as an asset which, based upon "detailed calculations," was

---

[1]  The Counterclaim was originally filed as a "Cross-Claim." (ECF No. 5). On June 14, 2010, the "Cross-Claim" was amended "to re-designate it as a Counterclaim." (ECF No. 6 at 2).

valued at $38,000,000. *Id*. This statement in the Balance Sheet "is materially false and misleading." *Id.*

Based upon the statements in the Private Placement Memorandum, Subscription Stock and Warrant Agreement and Balance Sheet, Young made an initial investment of $10,000 in Fluorotronics for the purchase of 20,000 shares of common stock of Fluorotronics. "Every [Private Placement Memorandum] ... and updated Balance Sheet[] Young received after making his initial investment in ... Fluorotronics contained the same false and misleading statements regarding ownership of the Camera, Laser, and unsupported valuation of Fluorotronics' intellectual property." *Id*. ¶ 15. "Young relied on the representations in these documents" in making subsequent investments in Fluorotronics on behalf of himself and the Pension Plan between March 21, 2008 and June 2, 2009. *Id*. ¶ 16; *see also id*. ¶¶ 17-19. Young invested a total of $74,500 for the purchase of 148,000 shares of common stock in Fluorotronics. Young on behalf of the Pension Plan invested a total of $296,531 for the purchase of 170,000 shares of preferred stock in Fluorotronics. With respect to these sales of stock, "Fluorotronics did not file the required notices of exempt offering of securities" with the Securities and Exchange Commission and the California Department of Corporations. *Id*. ¶ 28; *see also id*. ¶ 29.

Contrary to the representations of Sharts and Fluorotronics, Fluorotronics did not own the Camera. The Camera was on loan to Fluorotronics from Andor Technology, Inc. ("Andor"). On November 6, 2007, Fluorotronics entered into a purchase contract with Andor for the Camera. On February 25, 2008, Andor sent Fluorotronics an invoice for $42,646.46 for the purchase of the Camera. "Fluorotronics failed to pay the invoice within 30 days from the date of the invoice, as required in the 'Terms of Payment of Sale.' Accordingly, Andor was entitled to cancel the contract." *Id*. ¶ 24.

On June 16, 2009, Young purchased the Camera from Andor. On February 21, 2010, Andor sent an email to Sharts stating that "there was no basis for Fluorotronics to make any claim to the Camera as Fluorotronics never paid for the Camera." *Id*. ¶ 26. On or after March 1, 2010, "the Camera was ... released [by Andor] to ... Young." *Id*.

The Complaint alleges eight causes of action: (1) fraud; (2) negligent misrepresentation; (3) intentional misrepresentation; (4) securities fraud in violation of the Securities and Exchange Act of 1934, Section 10(b) and Rule 10b-5; (5) sale of unregistered securities; (6) breach of fiduciary duty; (7) violation of Section 1507(a) of the California General Corporation Law; and (8) violation of Section 2201 of the California General Corporation Law.

### B.   Allegations of the Counterclaim

"At all times mentioned herein ..., Fluorotronics was the owner of a patent and system called Pulsed Laser Isochronic & Raman Fluorescense Apparatus....  One vital part of the System is the 'Camera' referred to in the Complaint, and Young knew that without the Camera, the System cannot work.  At all times mentioned herein, Fluorotronics was ... the sole owner of said Camera."  (ECF No. 5 ¶ 5).  At all relevant times, "Young had no ownership interest in the System or the Camera"; "Young had no authority and/or right to possess ... the Camera"; and "Young had no authority and/or right to negotiate or deal with Andor Corporation ... in any manner on behalf of Fluorotronics and/or concerning the System or Camera."  *Id.* ¶¶ 5, 6.  "At all times mentioned herein, an economic and/or contractual relationship existed between Fluorotronics and Andor concerning the purchase, repair, and/or maintenance of the Camera with the probability of future economic benefit for [Fluorotronics]."  *Id.* ¶ 8.  "Young knew of the existence of that relationship between [Fluorotronics] and Andor, he knew that Fluorotronics was trying to convince investors to invest in the Corporation, and he knew that Fluorotronics needed the Camera to operate [to] convince investors to invest in the Corporation."  *Id.* ¶ 9.  Young "unlawfully [took] possession of the Camera and he keeps it to the present, notwithstanding the objections of [Counterclaimants] and their repeated requests for him to return it to [Fluorotronics]."  *Id.* ¶ 5.

The Counterclaim alleges seven causes of action: (1) intentional interference with economic relations and/or contractual relations; (2) negligent interference with economic relations and/or contractual relations; (3) breach of employment/non-disclosure/non-compete contract; (4) conversion; (5) misappropriation of trade secrets; (6) intentional misrepresentation; and (7) negligent misrepresentation. The Counterclaim seeks compensatory

1    damages, punitive damages, attorney's fees and costs.

2           **C.      Motion to Dismiss and Motion to Strike**

3           On July 6, 2010, Young filed the Motion to Dismiss the Counterclaim for failure to state

4    a claim upon which relief can be granted, and the Motion to Strike portions of the Answer and

5    Counterclaim.  (ECF Nos. 10, 11).  In the Motion to Dismiss, Young contends that Sharts,

6    Terry and Kuntz should be dismissed because only Fluorotronics is "the real party of interest

7    that could have suffered damages based on the allegations of the Counterclaim."  (ECF No.

8    10-1 at 9).  Young contends that the Counterclaim is "unclear, ambiguous and unintelligible"

9    because documents attached to the Complaint show that "the Camera is not 'wholly' owned

10   by Fluorotronics," as alleged in the Counterclaim.  *Id*. at 11.  Young contends that each of the

11   Counterclaim's seven causes of action are insufficiently pled.  In the Motion to Strike, Young

12   requests that the Court strike ten affirmative defenses in the Answer and twenty words or

13   phrases in the Counterclaim, including the prayer for punitive damages and attorney's fees.

14          On July 26, 2010, Counterclaimants filed oppositions to the Motion to Dismiss and

15   Motion to Strike.  (ECF Nos. 13, 14).  Counterclaimants contend that each of the

16   Counterclaim's causes of action state sufficient facts pursuant to Federal Rule of Civil

17   Procedure 8 or 9(b).  Counterclaimants do not oppose the motion to strike nine affirmative

18   defenses, but otherwise oppose the Motion to Strike.  Counterclaimants request that the Motion

19   to Dismiss and Motion to Strike be denied, or alternatively, that leave to amend be granted.

20          On August 2, 2010, Young filed reply briefs.  (ECF Nos. 15, 16).

21          On August 4, 2010, Counterclaimants filed a notice of voluntary dismissal of

22   Counterclaimant Kuntz pursuant to Federal Rule of Civil Procedure 41.  (ECF No. 17).

23   **II.    Discussion**

24          **A.      Motion to Dismiss**

25                   **1.       Standard of Review**

26          Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim

27   upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6)

28   is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support

1  a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
2  1990).

3       To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint
4  "does not need detailed factual allegations" but the "[f]actual allegations must be enough to
5  raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
6  555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
7  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause
8  of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to
9  dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*,
10  --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). "[F]or a complaint to survive a motion to dismiss,
11  the non-conclusory factual content, and reasonable inferences from that content, must be
12  plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572
13  F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

14       **2.**     **Request for Judicial Notice**

15       Young requests that the Court take judicial notice of Exhibit B to Young's Complaint,
16  a "Private Placement Memorandum" dated January 1, 2007. (ECF No. 1 at 68). In his
17  memorandum supporting the Motion to Dismiss, Young contends that this document
18  "[c]learly" shows that "the Camera is not 'wholly' owned by Fluorotronics." (ECF No. 10-1
19  at 11).

20       A court ruling on a motion to dismiss may take judicial notice of documents attached
21  to the pleading being challenged, or "documents whose contents are alleged in [the challenged
22  pleading] and whose authenticity no party questions, but which are not physically attached to
23  the ... pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (quotation
24  omitted). Also, "under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public
25  record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted).

26       The Private Placement Memorandum is not attached to the Counterclaim and is not
27  referenced in the Counterclaim. Young has made no showing that the Private Placement
28  Memorandum is a matter of public record pursuant to Federal Rule of Evidence 201.

Accordingly, the Court declines to take judicial notice of the Private Placement Memorandum for the purposes of ruling on Young's Motion to Dismiss the Counterclaim.

### 3. Motion to Dismiss Causes of Action Brought by Sharts and Terry

Young moves to dismiss the causes of action brought by Sharts and Terry on the grounds that "Counterclaimants have failed ... to identify which Counterclaimant is making the allegation," and "[t]he only real party of interest that could have suffered damages based on the allegations of the Counterclaim is Fluorotronics." (ECF No. 10-1 at 12; ECF No. 15 at 2).[2]

The Counterclaim alleges that "Kuntz, Sharts, and Terry are all shareholders in Fluorotronics." (ECF No. 5 ¶ 2). Otherwise, no individual Counterclaimant is referenced in the Counterclaim except for the repeated allegation that Young "caused damages, both special and general, to Fluorotronics, Sharts, Kuntz, and Terry in an amount according to proof at trial." *Id*. ¶ 16; *see also id*. ¶¶ 23 (same); 28 ("[Counterclaimants] and each of them were damaged by this breach, both special and general, according to proof at trial."); 32 (same); 37 (same); 42 (same); 47 (same).

The Counterclaim fails to allege "non-conclusory factual content" which is "plausibly suggestive of a claim" entitling Sharts and/or Terry to relief apart from Fluorotronics. *Moss*, 572 F.3d at 969 (quotation omitted). The Motion to Dismiss the causes of action brought by Sharts and Terry is granted. All causes of action in the Counterclaim brought by Sharts and Terry are dismissed without prejudice.

### 4. Intentional Interference with Economic Relations and/or Contractual Relations

Young moves to dismiss the Counterclaim's first cause of action for "intentional interference with economic relations and/or contractual relations" (ECF No. 5 at 18), on the basis that the Counterclaim "fail[s] to set forth the required elements." (ECF No. 10-1 at 13).

California recognizes a tort for intentional interference with existing contractual

---

[2] Young moved to dismiss Kuntz on the same basis, but Kuntz subsequently filed a notice of voluntary dismissal. (ECF No. 17).

relations and a separate tort for intentional interference with prospective economic advantage.[3] *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105, 1108 (9th Cir. 2007) (applying California law). It appears that the first cause of action of the Counterclaim attempts to state a claim for both torts. (*See, e.g.*, ECF No. 5 ¶ 8 (referencing both an "economic relationship" and a "contractual relationship" between Fluorotronics and Andor)).

### a. Intentional Interference with Existing Contractual Relations

"The tort of intentional interference with contract requires allegations of the following elements: '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *CRST Van Expedited*, 479 F.3d at 1105 (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998)).

The Counterclaim alleges that a "contractual relationship existed between Fluorotronics and Andor concerning the purchase, repair, and/or maintenance of the Camera"; "Young knew of the existence of that relationship between [Fluorotronics] and Andor"; "Young committed acts intentionally designed to disrupt said relationship ... by meddling into the repair, maintenance and/or possession of the Camera, when he knew he had no right to be involved with Andor concerning the Camera"; "Young negotiated with Andor ... and ... took possession of the Camera directly from Andor"; "[d]ue to the misconduct of Young ..., the ... contractual relationship between Andor and Fluorotronics was in fact disrupted"; and "[s]aid disruption caused damages." (ECF No. 5 ¶¶ 8, 9, 11, 12, 15, 16). The Counterclaim adequately alleges a claim for intentional interference with existing contractual relations. *See CRST Van Expedited*, 479 F.3d at 1105.

### b. Intentional Interference with Prospective Economic Advantage

The tort of "interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself." *Id.* at 1108 ("The primary difference between the two torts is that, unlike intentional interference with existing

---

[3] The parties do not dispute that California law applies.

contractual relations, interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself.") (citation omitted). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). The pleader "merely must allege that [defendant]'s acts were unlawful for a reason other than that they interfered with [plaintiff]'s prospective economic advantage." *CRST Van Expedited*, 479 F.3d at 1110.

The Counterclaim alleges that Young "unlawfully took possession of the Camera directly from Andor when he had no right to possess the Camera," and "Young intended to destroy [Fluorotronics] by his unlawful acts regarding the Camera and by keeping the Camera from being used by its rightful owner, Fluorotronics." (ECF No. 5 ¶¶ 12, 14). The Counterclaim adequately alleges that Young's possession of the Camera was "unlawful for a reason other than that [Young's possession of the Camera] interfered with [Fluorotronic]'s prospective economic advantage." *CRST Van Expedited*, 479 F.3d at 1110. The Motion to Dismiss Fluorotronics' first cause of action is denied.

### 5. Negligent Interference with Economic Relations and/or Contractual Relations

Young moves to dismiss the Counterclaim's second cause of action for "negligent interference with economic relations and/or contractual relations" (ECF No. 5 at 19), on the basis that the Counterclaim "fail[s] to set forth the required elements." (ECF No. 10-1 at 15).

California does not recognize a cause of action for negligent interference with contractual relations. *See Fifield Manor v. Finston*, 54 Cal. 2d 632, 636 (1960) ("The courts have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome."). California does recognize a cause of action for negligent interference with prospective economic advantage.

"The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates" the following:

(1) an economic relationship existed between the plaintiff and a third party

which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

*Venhaus v. Shultz* 155 Cal. App. 4th 1072, 1078 (2007) (quotation omitted).  "The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care....  [A]mong the criteria for establishing a duty of care is the blameworthiness of the defendant's conduct.  For negligent interference, a defendant's conduct is blameworthy only if it was independently wrongful apart from the interference itself."  *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1187 (1998) (quotations omitted).

The Counterclaim adequately alleges the elements of the tort of negligent interference with prospective economic advantage, including the allegation that "Young committed acts negligently designed to disrupt said relationship between [Fluorotronics] and Andor by meddling into the repair, maintenance and/or possession of the Camera, when he negligently thought he had a right to be involved with Andor concerning the Camera," and Young "negligently took possession of the Camera directly from Andor when he had no right to possess the Camera."  (ECF No. 5 ¶¶ 19, 20).  The Motion to Dismiss is denied as to Fluorotronics' second cause of action for negligent interference with prospective economic advantage.

### 6.  Breach of Employment/Non-Disclosure/Non-Compete Contract

Young moves to dismiss the third cause of action for breach of employment/non-disclosure/non-compete contract on the basis that the Counterclaim fails to set forth the terms of the alleged contract or attached a copy of it; Counterclaimants do not allege that they complied with all conditions of the agreement that they are required to perform; and Young "believe[s]" Counterdefendants are referencing a contract with an arbitration clause requiring mandatory arbitration for any controversy or claim arising out of the agreement. (ECF No. 10-1 at 19).

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008) (citation omitted).

Fluorotronics' third cause of action alleges: "Young and [Fluorotronics] entered into an employment contract which included a non-disclosure clause, as a well as a covenant not to compete clause. ... By unlawfully taking control and/or possession of the Camera, Young breached said contract." (ECF No. 5 ¶¶ 25, 27). The Counterclaim fails to allege that Fluorotronics performed under the contract or had an excuse for nonperformance. *See CDF Firefighters*, 158 Cal. App. 4th at 1239. Accordingly, the Motion to Dismiss the cause of action for breach of employment/non-disclosure/non-compete contract is granted. The Counterclaim's cause of action for breach of employment/non-disclosure/non-compete contract is dismissed without prejudice.

### 7.    Conversion

Young moves to dismiss the fourth cause of action for conversion. Young contends that the Counterclaim "fail[s] to set forth the required elements," and "Counterclaimants had no title to the Camera that the[y] allege[] was converted by Young." (ECF No. 10-1 at 20-21).

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939-40 (2009) (quotation omitted).

The Counterclaim alleges that the Camera was at all relevant times "wholly owned" by Fluorotronics; Young took "possession of the Camera, [and] ... unlawfully converted the Camera for his own purposes and thereby deprived ... [Fluorotronics] the use of the Camera"; and Fluorotronics suffered damages "[d]ue to said conversion of the Camera." (ECF No. 5 ¶¶ 5, 30, 32). Fluortronics has adequately alleged a claim for conversion. Although Young disputes Fluorotronics' allegation that Fluorotronics owned the Camera, when considering a

motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Iqbal*, 129

S. Ct. at 1950.  The Motion to Dismiss Fluorotronics' cause of action for conversion is denied.

### 8.      Misappropriation of Trade Secrets

Young moves to dismiss the fifth cause of action for misappropriation of trade secrets.

Young contends that the Counterclaim "fail[s] to set forth the required elements" and

"Counterclaimants have failed to allege ... that they have any proof that Young used their

secret to their detriment."  (ECF No. 10-1 at 21).

To state a cause of action for misappropriation of trade secrets under California law, a

plaintiff must plead two primary elements: (1) the existence of a trade secret, and (2)

misappropriation of the trade secret.  *See* Cal. Civ. Code § 3426.1, *et seq*.  California law

defines "misappropriation" to include "(1) [a]cquisition of a trade secret of another by a person

who knows or has reason to know that the trade secret was acquired by improper means; or (2)

[d]isclosure or use of a trade secret of another without express or implied consent by a person

who ... [u]sed improper means to acquire knowledge of the trade secret...."  Cal. Civ. Code §

3426.1(b).

The Counterclaim alleges that "the System, including the Camera" were "trade secrets,"

and "by unlawfully and/or improperly possessing the Camera and/or using the Camera and/or

disclosing to others its inner workings," Young "misappropriat[ed] said trade secrets, all

without the permission of any of the [Counterclaimants]."  (ECF No. 5 ¶¶ 35, 36).

Fluorotronics has adequately alleged a claim for misappropriation of trade secrets.  The Motion

to Dismiss Fluorotronics' cause of action for misappropriation of trade secrets is denied.

### 9.      Intentional Misrepresentation and Negligent Misrepresentation

Young moves to dismiss the claims for "intentional misrepresentation (fraud)" and

negligent misrepresentation.  (ECF No. 5 at 22).

"The ... elements of a cause of action for fraud are: (1) a misrepresentation, which

includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation,

i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and

(5) resulting damages."  *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004)

(citing *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003)).  "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance.  In both causes of action, the plaintiff must plead that he or she actually relied on the misrepresentation."  *Id*. (citation omitted).

"It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirement."  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *see also Lorenz v. Sauer*, 807 F.2d 1509, 1511-12 (9th Cir. 1987) ("Under California law, negligent misrepresentation is a species of actual fraud....").  Pursuant to Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) "requires more specificity [than Rule 8,] including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted).

The intentional misrepresentation claim alleges that "[a]t all times that Young unlawfully meddled into the economic affairs between [Fluorotronics] and Andor, he did so by intentionally misrepresenting to Andor that he owned, and/or had a right to possess, and/or had a right to control the Camera, and/or had a right to negotiate for the repair and/or maintenance of the Camera."  (ECF No. 5 ¶ 40).  The intentional misrepresentation claim alleges that "[b]y said intentional acts, Young unlawfully convinced and/or induced Andor to deal directly with him concerning the Camera, and ship the Camera directly to him instead of its rightful owner, [Fluorotronics]."  *Id*. ¶ 41.  The negligent misrepresentation claim contains identical allegations, but substitutes the words "negligently" and "negligent" for "intentionally" and "intentional."  *Id*. ¶¶ 45, 46.

The intentional misrepresentation and negligent misrepresentation claims do not allege the element of justifiable reliance.  The allegations fail to include "an account of the time, place, and specific content of the false representations."  *Swartz*, 476 F.3d at 764.  The intentional misrepresentation and negligent misrepresentation claims fail to "state with

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Motion to Dismiss the causes of action for intentional misrepresentation and negligent misrepresentation is granted. The causes of action for intentional misrepresentation and negligent misrepresentation are dismissed without prejudice.

### B.   Motion to Strike

#### 1.   Standard of Review

Rule 12(f) of the Federal Rules of Civil Procedure states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, --- F.3d ----, 2010 WL 3222417, at *3 (9th Cir., Aug. 17, 2010) (quotation omitted). "Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint. ... Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Id*. (quotation omitted).

#### 2.   Affirmative Defenses

Pursuant to the agreement of the parties, the first, fourth, fifth, thirteenth, fourteenth, sixteenth, eighteenth and nineteenth affirmative defenses are stricken. (ECF No. 11 at 2-4; ECF No. 14 at 2-3). The twentieth affirmative defense is identical to the eleventh affirmative defense. (ECF No. 5 at 13, 16). Pursuant to Rule 12(f), the twentieth affirmative defense is stricken as redundant.

#### 3.   Counterclaim

Young moves to strike the following words or phrases from the Counterclaim: "unlawful," "unlawfully," "misconduct," "misappropriating," "misappropriation," "malice," "oppression," "punitive damages," and "attorney fees and costs." (ECF No. 11 at 5-6).

For the reasons discussed above with respect to Fluorotronics' causes of action for intentional and negligent interference with economic relations and/or contractual relations, the Motion to Strike references to "unlawful," "unlawfully," and "misconduct" is denied. *See*

*CRST Van Expedited*, 479 F.3d at 1108 (tort of interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful or unlawful independent of the interference itself).

For the reasons discussed above with respect to Fluorotronics' cause of action for misappropriation of trade secrets, the Motion to Strike references to "misappropriating" and "misappropriation" is denied.

Young moves to strike references to "malice," "oppression," "punitive damages," and "attorney fees and costs" on the basis that Fluorotronics fails to plead these issues with sufficient specificity pursuant to Federal Rule of Civil Procedure 9(b) and California substantive law. (ECF No. 11-1 at 12, 14-15). A motion to strike pursuant to Rule 12(f) is not the appropriate vehicle to challenge claims for damages or other matters which may be raised via a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Whittlestone*, 2010 WL 3222417, at *4 ("Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading ..., we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose."). Accordingly, the Motion to Strike the references to "malice," "oppression," "punitive damages," and "attorney fees and costs" is denied.

## III. Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss Counterclaim is GRANTED in part and DENIED in part. (ECF No. 10). The Motion to Dismiss is granted as to all causes of action brought by Sharts and Terry. All causes of action in the Counterclaim brought by Sharts and Terry are dismissed without prejudice. The Motion to Dismiss is granted as to Fluorotronics' causes of action for breach of employment/non-disclosure/non-compete contract, intentional misrepresentation and negligent misrepresentation. The causes of action in the Counterclaim for breach of employment/non-disclosure/non-compete contract, intentional misrepresentation and negligent misrepresentation are dismissed without prejudice. In all other respects, the Motion to Dismiss is denied.

1   IT IS FURTHER ORDERED that the Motion to Strike Portions of the Answer and

2   Counterclaim is GRANTED in part and DENIED in part.  (ECF No. 11).  Defendants' first,

3   fourth, fifth, thirteenth, fourteenth, sixteenth, eighteenth, nineteenth and twentieth affirmative

4   defenses are stricken.  In all other respects, the Motion to Strike is denied.

5   Counterclaimants' request for leave to amend is DENIED without prejudice to file a

6   motion for leave to amend the Counterclaim, accompanied by a proposed first amended

7   counterclaim.

8   DATED:  November 3, 2010

9                                                    William Q. Hayes

10                                              **WILLIAM Q. HAYES**
                                               United States District Judge